

RANDY S. GROSSMAN
United States Attorney
P. KEVIN MOKHTARI
Assistant U.S. Attorney
California Bar No. 253283
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-7996
Telephone: (619) 546-8402
Email: Kevin.Mokhtari@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 21-CR-1538-GPC |
|---|---|
| Plaintiff, | **PLEA AGREEMENT** |
| v. | |
| LEONARDO TRULSEN DE OLIVEIRA (4), | |
| Defendant. | |

IT IS HEREBY AGREED between the plaintiff, UNITED STATES OF AMERICA, through its counsel, Randy S. Grossman, United States Attorney, and P. Kevin Mokhtari, Assistant United States Attorney, and defendant, LEONARDO TRULSEN DE OLIVEIRA ("TRULSEN"), with the advice and consent of Sandra Lechman, counsel for defendant, as follows:

//
//
//
//
//
//
//

PKM:PKM:1/7/22

Def. Initials _____

# I

# THE PLEA

A. THE CHARGE

Defendant agrees plead guilty to Counts 1, 2, 6, 8, and 15 Indictment charging defendant with:

### Count 1

Beginning on a date unknown, but no later than June 2018, and continuing up to and including May 13, 2021, within the Southern District of California and elsewhere, defendants GUSTAVO DE AVILA MOREIRA FARINHA, TATIANE PEREIRA ARANTES, NATALIA MAGALHAES ROCHA, LEONARDO TRULSEN DE OLIVEIRA, and THASSYA REBECCA DA SILVA ALVES, together with each other and with others known and unknown, knowingly and intentionally conspired to commit wire fraud, in violation of Title 18, United States Code, Section 1343, that is, to devise a material scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and, for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds.

### Count 2

Beginning on a date unknown, but at least since June 2018, up to and including May 13, 2021, within the Southern District of California and elsewhere, the defendants GUSTAVO DE AVILA MOREIRA FARINHA, TATIANE PEREIRA ARANTES, NATALIA MAGALHAES ROCHA, LEONARDO TRULSEN DE OLIVEIRA, and THASSYA REBECCA DA SILVA ALVES, and others known and unknown, did knowingly combine, conspire, and agree with each other and with other persons known and unknown to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, to wit:

    a.    to knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is conspiracy to commit wire fraud, with the intent to promote the carrying on of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some

form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i); and

  b. to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, conspiracy to commit wire fraud, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

All in violation of Title 18, United States Code, Section 1956(h).

## Counts 6, 8, 15

On or about the dates set forth below, within the Southern District of California and elsewhere, during and in relation to a felony violation of 18 U.S.C. § 1349 (conspiracy to commit wire fraud), the defendant listed in the table below knowingly used, without legal authority, the means of identification, that is, the names, dates of birth and driver's license numbers, of the following specified individuals, knowing that the means of identification belonged to another actual person:

| Count | Approx. Date | Actual Person (Initials) | Document/ Identifier |
|---|---|---|---|
| 6 | 2020-02-04 | J.H. | Name, Date of Birth ("DOB") |
| 8 | 2020-04-20 | C.J.C. | Name, DOB |
| 15 | 2020-09-16 | L.C.E. | CA Driver's License |

B. PRESERVATION OF EVIDENCE

Defendant agrees that, following entry of Defendant's guilty plea, the Government need not hold or preserve any evidence seized in connection with this case. For any controlled substance seized in connection with this case, Defendant agrees that, following entry of Defendant's guilty plea, the Government may destroy the controlled

Plea Agreement     3     Def. Initials _____
                                             21-CR-1538-GPC

substance 30 days after the Government has provided Defendant with the laboratory analysis report. If Defendant believes that additional testing is needed, Defendant will arrange for and complete such testing within that 30-day period, unless that period is extended by joint written agreement or Court order, in which case the Government shall preserve the controlled substance for the agreed-upon or judicially mandated period. If the court has issued a preservation order in connection with any seized evidence, Defendant will request that the Court lift or revoke the preservation order following entry of Defendant's guilty plea.

C.   CRIMINAL FORFEITURE

In addition, Defendant consents to the forfeiture allegations of the Indictment. The forfeiture in this case is more fully set forth in Section X below.

## II

### NATURE OF THE OFFENSE

A.   ELEMENTS EXPLAINED

The offenses to which defendant is pleading guilty has the following elements:

Count 1

1. There was an agreement between two or more persons to commit wire fraud; and

2. Defendant became a member of the conspiracy knowing of at least one of its objects and intended to help accomplish it.

The elements of wire fraud are:

1. Defendant knowingly participated in a scheme or plan to defraud, or to obtain money or property by means of false or fraudulent pretenses, representations, or promises;

//

2. The statements made or facts omitted as part of the scheme were materials; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property

3. Defendant acted with the intent to defraud; that is, the intent to deceive and cheat;

4. Defendant used, or caused to be used, the wires to carry out an essential part of the scheme.

5. Defendant became a member of the conspiracy knowing of its objects and intending to help accomplish them.

As to the forfeiture, the Government would have to prove, by a preponderance of the evidence, the property constitutes or is derived from proceeds the Defendant obtained directly or indirectly from the violations, or was property used, or intended to be used, to commit or to facilitate the commission of the violations.

## Count 2

1. There was an agreement between two or more persons to commit money laundering;

2. Defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.

The elements of money laundering are:

1. Defendant conducted a financial transaction involving property that represented the proceeds of wire fraud;

2. Defendant knew that the property represented the proceeds of wire fraud; and

3. Defendant either (a) acted with the intent to promote the carrying on of wire fraud; or (b) knew that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of wire fraud.

As to the forfeiture, the Government would have to prove, by a preponderance of the evidence, the property constitutes or is derived

from proceeds the Defendant obtained directly or indirectly from the violations, or was property used, or intended to be used, to commit or to facilitate the commission of the violations.

### Count 6, 8, 15

1. Defendant knowingly transferred, possessed or used, without legal authority, a means of identification of another person;

2. Defendant knew that the means of identification belonged to a real person; and

3. Defendant did so during and in relation to conspiracy to commit wire fraud.

B. ELEMENTS UNDERSTOOD AND ADMITTED - FACTUAL BASIS

Defendant has fully discussed the facts of this case with defense counsel. Defendant has committed each element of the crime and admits that there is a factual basis for this guilty plea. The following facts are true and undisputed:

### Count 1

1. Beginning in 2019 and continuing up to and including May 13, 2021, defendant LEONARDO TRULSEN DE OLIVEIRA together with his co-defendants and others devised and participated in a scheme to defraud companies that offer rideshare and food/grocery delivery services (the "Rideshare/Delivery Companies") as those companies are described in the Indictment.

2. Specifically, TRULSEN and his co-conspirators, all of whom are Brazilian citizens living unlawfully in the United States, used the stolen identities and means of identification (such as driver's licenses and social security numbers) of unknowing individual victims to create fraudulent driver accounts on the Rideshare/Delivery Companies' platforms in the victim's names and using their identities.

3. TRULSEN obtained money and property by means of materially false and fraudulent pretenses, representations and promises.

4. TRULSEN and his co-defendants conspired with one another and with others to use, rent or sell the accounts to individuals who might not otherwise qualify to drive for those services.

5. The fraudulent scheme included:

   a. Obtaining images of victims' driver's licenses, or the information on victims' driver's licenses, and Social Security Numbers from various sources.

   b. Creating accounts to drive for the Rideshare/Delivery Companies using those stolen identifiers and/or identification documents;

   c. Using, renting, and/or selling those accounts, including to people who might not otherwise qualify to drive for the Rideshare/Delivery Companies;

   d. Causing the Rideshare/Delivery Companies to generate taxable income in the names of the identity theft victims for income they never earned; and

   e. Using fake driver accounts for the purpose of referring other drivers to the Rideshare/Delivery Companies, and then collecting referral and sign-up bonusses from the companies for additional fake accounts that the conspirators created.

6. TRULSEN participated in the creation of fraudulent driver accounts, personally used fraudulent accounts, and collected payments from the Rideshare/Delivery Companies directly. TRULSEN also shared some of the fraudulent accounts with other co-conspirators. At times, TRULSEN would pay for a new fraudulent account up front. At other times, TRULSEN would have a new fraudulent driver account created and would compensate his co-conspirators by paying any sign-up bonuses to the creator of the account once those bonuses were accrued.

                              Count 2

1. In connection with the fraudulent scheme described above (the "wire fraud scheme"), TRULSEN conducted numerous financial transactions affecting interstate commerce that involved the proceeds of the wire fraud scheme. The financial transactions included bank-to-bank transfers, peer-to-peer digital transfers, and debit card transactions.

2. While conducting these financial transactions, TRULSEN knew that the property involved in these transactions represented the proceeds of the wire fraud scheme.

3. TRULSEN conducted the financial transactions with the intent to promote the carrying on of the wire fraud conspiracy, such as to pay for vehicle payments, insurance, gas, and other things necessary to perpetuate the wire fraud scheme.

4. After receiving payment from the Rideshare/Delivery Service companies, TRULSEN also conducted financial transactions knowing that those transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the wire fraud scheme.

Counts 6, 8, 15

1. In connection with the wire fraud scheme, defendant knowingly transferred, possessed, and used, without legal authority, means of identification of other persons, including names, dates of birth ("DOB"), and California Driver's licenses ("CADL"), on the dates and in connection with the platforms set forth below to create fraudulent driver accounts:

| Count | Date | Actual Person (Initials) | Document/ Identifier | Platform |
|---|---|---|---|---|
| 6 | 2020-02-04 | J.H. | Name, DOB, CADL | Delivery Company D |
| 8 | 2020-03-29 | C.J.C. | Name, DOB, CADL | Delivery Company D |
| 15 | 2020-09-16 | L.C.E. | Name, DOB, CADL | Delivery Company C |

2. Defendant knew that these means of identification listed above, for J.H., C.J.C. and L.C.E., belonged to real persons.

3. Defendant knowingly transferred, possessed, and used these means of identification to create fraudulent driver accounts using the identities of these individuals without their knowledge as part of the wire fraud conspiracy.

## III

## **PENALTIES**

The crime to which Defendant is pleading guilty carry the following penalties:

Count 1

A. a maximum 20 years in prison

B. a maximum $250,000 fine;

C. a mandatory special assessment of $100.00 per count;

D. a term of supervised release of at least 3 years. Defendant understands that failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring defendant to serve in prison, upon any such revocation, all or part of the statutory maximum term of supervised release for the offense that resulted in such term of supervised release;

F. forfeiture to the United States of all property, real and personal, that constitutes or is derived from proceeds of the

offenses, and all property, real and personal, that was used to commit or to facilitate the commission of the offenses.

### Count 2

A. a maximum 20 years in prison;

B. a maximum $500,000 fine or twice the value of the monetary instruments or funds involved;

C. a mandatory special assessment of $100.00 per count;

D. a term of supervised release of at least 3 years. Defendant understands that failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring defendant to serve in prison, upon any such revocation, all or part of the statutory maximum term of supervised release for the offense that resulted in such term of supervised release; and

F. forfeiture to the United States of all property, real and personal, that was involved in the offense and any property traceable to such property.

### Counts 6, 8, 15 (**per count**)

A. a mandatory minimum of 2 years in prison, which runs consecutively to the sentence imposed in Count 1; and

B. a term of supervised release of no more than 1 year.

### IV

### DEFENDANT'S WAIVER OF TRIAL RIGHTS AND UNDERSTANDING OF CONSEQUENCES

This guilty plea waives Defendant's right at trial to:

A. Continue to plead not guilty and require the Government to prove the elements of the crime beyond a reasonable doubt;

B. A speedy and public trial by jury;

C. The assistance of counsel at all stages of trial;

D. Confront and cross-examine adverse witnesses;

E. Testify and present evidence and to have witnesses testify on behalf of defendant; and

F. Not testify or have any adverse inferences drawn from the failure to testify.

Defendant has been advised by counsel and understands that because defendant is not a citizen of the United States, defendant's conviction in this case make it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States. Defendant may also be denied United States citizenship and admission to the United States in the future.

## V

## DEFENDANT ACKNOWLEDGES NO PRETRIAL RIGHT TO BE PROVIDED WITH IMPEACHMENT AND AFFIRMATIVE DEFENSE INFORMATION

Any information establishing the factual innocence of Defendant known to the undersigned prosecutor in this case has been turned over to Defendant. The Government will continue to provide such information establishing the factual innocence of defendant.

If this case proceeded to trial, the Government would be required to provide impeachment information for its witnesses. In addition, if Defendant raised an affirmative defense, the Government would be required to provide information in its possession that supports such a defense. By pleading guilty, defendant will not be provided this information, if any, and defendant waives any right to this information. Defendant will not attempt to withdraw the guilty plea or file a collateral attack on the existence of this information.

## VI

## DEFENDANT'S REPRESENTATION THAT GUILTY PLEA IS KNOWING AND VOLUNTARY

Defendant represents that:

A. Defendant has had a full opportunity to discuss all the facts and circumstances of this case with defense counsel and has a clear understanding of the charges and the consequences of this plea. By pleading guilty, Defendant may be giving up, and rendered ineligible to receive, valuable government benefits and civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to

serve on a jury. The conviction in this case may subject Defendant to various collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case; debarment from government contracting; and suspension or revocation of a professional license, none of which can serve as grounds to withdraw Defendant's guilty plea;

B. No one has made any promises or offered any rewards in return for this guilty plea, other than those contained in this agreement or otherwise disclosed to the court;

C. No one has threatened Defendant or Defendant's family to induce this guilty plea; and,

D. Defendant is pleading guilty because Defendant is guilty and for no other reason.

## VII

### AGREEMENT LIMITED TO U.S. ATTORNEY'S OFFICE, SOUTHERN DISTRICT OF CALIFORNIA

This plea agreement is limited to the United States Attorney's Office for the Southern District of California, and cannot bind any other authorities in any type of matter, although the Government will bring this plea agreement to the attention of other authorities if requested by Defendant.

## VIII

### APPLICABILITY OF SENTENCING GUIDELINES

The sentence imposed will be based on the factors set forth in 18 U.S.C. § 3553(a). In imposing the sentence, the sentencing judge must consult the United States Sentencing Guidelines (Guidelines) and take them into account. Defendant has discussed the Guidelines with defense counsel and understands that the Guidelines are only advisory, not mandatory. The Court may impose a sentence more severe or less severe than otherwise applicable under the Guidelines, up to the maximum in the statute of conviction. The sentence cannot be determined until a presentence report is prepared by the U.S. Probation Office and defense

counsel and the Government have an opportunity to review and challenge the presentence report. **Defendant agrees to request that a presentence report be prepared**. Nothing in this plea agreement limits the Government's duty to provide complete and accurate facts to the district court and the U.S. Probation Office.

## IX

## SENTENCE IS WITHIN SOLE DISCRETION OF JUDGE

This plea agreement is made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B). The sentence is within the sole discretion of the sentencing judge who may impose the maximum sentence provided by statute. It is uncertain at this time what Defendant's sentence will be. The Government has not made and will not make any representation as to what sentence Defendant will receive. Any estimate of the probable sentence by defense counsel is not a promise and is **not binding on the Court**. Any recommendation made by the Government at sentencing is also not binding on the Court. If the sentencing judge does not follow any of the parties' sentencing recommendations, Defendant will not withdraw the plea.

## X

## PARTIES' SENTENCING RECOMMENDATIONS

A.  SENTENCING GUIDELINE CALCULATIONS

Although the Guidelines are only advisory and just one factor the Court will consider under 18 U.S.C. § 3553(a) in imposing a sentence, the parties will jointly recommend the following Base Offense Level, Specific Offense Characteristics, Adjustments, and Departures:

    1.    Base Offense Level [USSG § 2B1.1(a)(1)]    7

    2.    Loss Amount [§2B1.1(b)(1)(F)]    +10
        [More than $150,000]

|   |   |   |
|---|---|---|
| 3. | 10 or More Victims [§2B1.1(b)(2)(A)(i)] | +2 |
| 4. | Receipt/Sale Stolen Property [§2B1.1(b)(4)] | +2 |
| 5. | Grouping (Money Laundering) [§3D1.2] | +2 |
| 6. | Acceptance of Responsibility [§ 3E1.1] | -3 |
| 7. | Expeditious Resolution / Full Appellate Wavier [§ 5K2.0] | -2 |

In addition, the parties will jointly recommend the following per count for Counts 6, 8, and 15:

| | | |
|---|---|---|
| 1. | Term Required by Statute [USSG § 2B1.6] | 24 mos |

B. ACCEPTANCE OF RESPONSIBILITY

Despite paragraph A above, the Government need not recommend an adjustment for Acceptance of Responsibility if Defendant engages in conduct inconsistent with acceptance of responsibility including, but not limited to, the following:

1. Fails to truthfully admit a complete factual basis as stated in the plea at the time the plea is entered, or falsely denies, or makes a statement inconsistent with, the factual basis set forth in this agreement;

2. Falsely denies prior criminal conduct or convictions;

3. Is untruthful with the Government, the Court or probation officer; or

4. Breaches this plea agreement in any way.

C. FURTHER ADJUSTMENTS AND SENTENCE REDUCTIONS INCLUDING THOSE UNDER 18 U.S.C. § 3553

Defendant **may** request or recommend additional downward adjustments, departures, or variances from the Sentencing Guidelines under 18 U.S.C. § 3553. The Government will oppose any downward adjustments, departures, or variances not set forth in Section X, paragraph A above.

//

D.  NO AGREEMENT AS TO CRIMINAL HISTORY CATEGORY

The parties have **no** agreement as to Defendant's Criminal History Category, except that, if Defendant is determined to be a Career Offender, the parties agree that the Defendant is automatically a Criminal History Category VI pursuant to USSG § 4B1.1(b).

E.  "FACTUAL BASIS" AND "RELEVANT CONDUCT" INFORMATION

The facts in the "factual basis" paragraph of this agreement are true and may be considered as "relevant conduct" under USSG § 1B1.3 and as the nature and circumstances of the offense under 18 U.S.C. § 3553(a)(1).

F.  PARTIES' RECOMMENDATIONS REGARDING CUSTODY

For **Counts 1 and 2,** the Government agrees to recommend that defendant be sentenced to the **low end** of the applicable guideline range as calculated by the Government at sentencing.

For the aggravated identity theft counts (**Counts 6, 8, and 15**), the parties agree that defendant must be sentenced to a mandatory minimum of 24 months' custody per count. As to Count 6, the parties agree that the Court must impose the sentence **consecutively** to the sentence imposed for Count 1.

As to **Counts 8 and 15,** the Government agrees to recommend that the sentences for these counts run **concurrently** to the sentence imposed for Count 5.

G.  SPECIAL ASSESSMENT/FINE/FORFEITURE

1.  Special Assessment

The parties will jointly recommend that Defendant pay a special assessment in the amount of $100.00 per felony count of conviction to be paid forthwith at time of sentencing. Special assessments shall be paid through the office of the Clerk of the District Court by bank or

cashier's check or money order made payable to the "Clerk, United States District Court."

    2.   Fine

The Government will not recommend a fine.

    3.   Forfeiture/Restitution

The financial addendum shall govern the forfeiture and restitution in this case.

H.   SUPERVISED RELEASE

The Government is free to recommend a period of supervised release. If the Court imposes a term of supervised release, Defendant will not seek to reduce or terminate early the term of supervised release until Defendant has served at least two-thirds of the term of supervised release and has fully paid and satisfied any special assessments, fine, criminal forfeiture judgment and restitution judgment.

## XI

## DEFENDANT WAIVES APPEAL AND COLLATERAL ATTACK

Defendant waives (gives up) all rights to appeal and to collaterally attack every aspect of the conviction and sentence. This waiver includes, but is not limited to, any argument that the statute of conviction or Defendant's prosecution is unconstitutional and any argument that the facts of this case do not constitute the crime charged. The only exception is defendant may collaterally attack the conviction or sentence on the basis that defendant received ineffective assistance of counsel. If defendant appeals, the Government may support on appeal the sentence or restitution order actually imposed.

//
//
//

## XII

## BREACH OF THE PLEA AGREEMENT

Defendant and Defendant's attorney know the terms of this agreement and shall raise, before the sentencing hearing is complete, any claim that the Government has not complied with this agreement. Otherwise, such claims shall be deemed waived (that is, deliberately not raised despite awareness that the claim could be raised), cannot later be made to any court, and if later made to a court, shall constitute a breach of this agreement.

Defendant breaches this agreement if defendant violates or fails to perform any obligation under this agreement. The following are non-exhaustive examples of acts constituting a breach:

A. Failing to plead guilty pursuant to this agreement;

B. Failing to fully accept responsibility as established in Section X, paragraph B, above;

C. Failing to appear in court;

D. Attempting to withdraw the plea;

E. Failing to abide by any court order related to this case;

F. Appealing (which occurs if a notice of appeal is filed) or collaterally attacking the conviction or sentence in violation of Section XI of this plea agreement; or

G. Engaging in additional criminal conduct from the time of arrest until the time of sentencing.

If Defendant breaches this plea agreement, Defendant will not be able to enforce any provisions, and the Government will be relieved of all its obligations under this plea agreement. For example, the Government may proceed to sentencing but recommend a different sentence than what it agreed to recommend above. Or the Government may pursue any charges including those that were dismissed, promised to be

dismissed, or not filed as a result of this agreement (Defendant agrees that any statute of limitations relating to such charges is tolled indefinitely as of the date all parties have signed this agreement; Defendant also waives any double jeopardy defense to such charges). In addition, the Government may move to set aside defendant's guilty plea. Defendant may not withdraw the guilty plea based on the Government's pursuit of remedies for Defendant's breach.

Additionally, if Defendant breaches this plea agreement: (i) any statements made by Defendant, under oath, at the guilty plea hearing (before either a Magistrate Judge or a District Judge); (ii) the factual basis statement in Section II.B in this agreement; and (iii) any evidence derived from such statements, are admissible against defendant in any prosecution of, or any action against, defendant. This includes the prosecution of the charge(s) that is the subject of this plea agreement or any charge(s) that the prosecution agreed to dismiss or not file as part of this agreement, but later pursues because of a breach by the Defendant. Additionally, Defendant knowingly, voluntarily, and intelligently waives any argument that the statements and any evidence derived from the statements should be suppressed, cannot be used by the Government, or are inadmissible under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, and any other federal rule.

## XIII

### CONTENTS AND MODIFICATION OF AGREEMENT

This plea agreement embodies the entire agreement between the parties and supersedes any other agreement, written or oral. No modification of this plea agreement shall be effective unless in writing signed by all parties.

## XIV

## **DEFENDANT AND COUNSEL FULLY UNDERSTAND AGREEMENT**

By signing this agreement, defendant certifies that defendant has read it (or that it has been read to defendant in defendant's native language). Defendant has discussed the terms of this agreement with defense counsel and fully understands its meaning and effect.

## XV

## **DEFENDANT SATISFIED WITH COUNSEL**

Defendant has consulted with counsel and is satisfied with counsel's representation. This is defendant's independent opinion, and defendant's counsel did not advise defendant about what to say in this regard.

Respectfully submitted,

RANDY S. GROSSMAN
United States Attorney

January 21, 2022
DATED

P. KEVIN MOKHTARI
Assistant U.S. Attorney

1/21/2022
DATED

*Sandra Lechman*
SANDRA LECHMAN
Defense Counsel

**IN ADDITION TO THE FOREGOING PROVISIONS TO WHICH I AGREE, I SWEAR UNDER PENALTY OF PERJURY THAT THE FACTS IN THE "FACTUAL BASIS" PARAGRAPH ABOVE ARE TRUE.**

1/21/2022
DATED

\* Leonardo Trulsen de Oliveira
LEONARDO TRULSEN DE OLIVEIRA
Defendant

Approved by:

*Victor P. White*
VICTOR P. WHITE
Assistant U.S. Attorney

\*On January 21, 2022, I, Sandra Lechman, attorney for Leonardo Trulsen de Oliveira read and explained this plea agreement to Mr. Trulsen de Oliveira with the help of a Court Certified Portuguese interpreter. Mr. Trulsen de Oliveira understood everything we discussed and authorized me to sign this plea for him. He understands that my signature on his behalf has the same effect as if he had signed himself. He agrees to be bound by all the terms and conditions of this plea.

Plea Agreement

Def. Initials _____

18

21-CR-1538-GPC